Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 3189 | **DATE** | 10/17/2002 |
| **CASE TITLE** | Eazypower Corp. vs. ICC Innovative Concepts Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter memorandum opinion and order. Defendant ICC's motion for summary judgment [68-1] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 4 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | OCT 18 2002 date docketed | |
| | Notified counsel by telephone. | | | 105 |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | 10/17/2002 date mailed notice | |
| IS | courtroom deputy's initials | Date/time received in central Clerk's Office | IS mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EAZYPOWER CORP., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 98 C 3189 |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Martin C. Ashman |
| ICC INNOVATIVE CONCEPTS CORP., | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED
OCT 1 8 2002

## MEMORANDUM OPINION AND ORDER

In this patent infringement suit, Eazypower Corporation accuses ICC Innovative Concepts Corporation of infringing U.S. Patent No. 4,876,929 and accuses Target Corporation of distributing or selling a product that infringes on Eazypower's patent. Before this Court is Defendant ICC's motion for summary judgment on Plaintiff's patent infringement, trade dress infringement and state law unfair competition claims. For the following reasons, ICC's motion is denied.[1]

### I. Background

Eazypower is the owner, by assignment, of United States Patent number 4,876,929 (the "Kozak patent"[2]). The Kozak patent was filed on September 15, 1988, and issued on October 31,

---

[1] The parties have consented to have this Court conduct any and all proceedings, including the entry of final judgment. *See* 28 U.S.C. § 636(c); Local R. 73(b).

[2] The parties repeatedly create new names for the patents, products, tools, and inventions that they discuss. For future reference, the parties should strive to seek continuity in this area, as it would create less confusion for the Court.

/05

1989. Burton Kozak is named as the inventor. This patent relates to a cordless electric screwdriver that includes a flexible extension shaft.

Defendant ICC Innovative Concepts sells a flexible extension shaft, called the Snake Driver, which can be used with various power tools, including screwdrivers. In May of 1998, Eazypower filed suit against ICC for patent infringement, violation of the Lanham Act, section 43(a), violation of the Illinois Uniform Deceptive Trade Practices Act, and unfair competition. ICC brought this motion for summary judgment on the grounds that the Kozak patent is invalid and that there is a lack of evidence for the trade dress and unfair competition claims.

The facts are hotly contested by the parties.[3] Not even such issues as the name of a company (Sun Flag versus Sun Flat or Shinki Industries versus Shinki Manufacturing) are agreed to by the parties. Nevertheless, the Court had waded through the parties' voluminous submissions and has pieced together some relevant facts. Other facts will be discussed in the following sections as needed.

Briefly, it appears that Japanese patent No. S 52-72185 was published in or around 1977. This device relates to the improvement of an extension attachment that can be used with an electric tool. Next, Japanese Design Registration No. 635,485 was published in 1984. This design looks externally similar to the Kozak patent. It is owned by Shinki Industries. According to a Chia Che Wu, a company named Sun Flag sold flexible extension shafts in or around 1985.

Back in the United States, a man named Harrison Fuller, who was affiliated with Omega Precision Tools, bought flexible shafts from Shinki Industries in the early 1980s. Mr. Fuller

---

[3] This Court struck Defendant ICC's response to Eazypower's statement of undisputed material facts for failure to comply with Local Rule 56.1.

recently found a sample of the extension tools in his basement that he claims to have bought from Shinki. Testing of this tool shows that the packaging material dates back to the early 1980s, however, a residue of an adhesive was also found on the packaging even though no adhesive had been used on the tool packages that were sold in the early 1980s. The shaft found in Mr. Fuller's basement was 7½ inches long, and the Omega tools were supposedly six inches long. Bernard Zurn, a buyer for True Value Hardware or Cotter & Company, bought flexible extension shafts from Omega in the early 1980s and sold them to True Value retailers. Over 50,000 to 100,000 flexible shafts were sold to True Value retailers, including at the True Value stores throughout the Chicagoland area. Mr. Kozak lived in the Chicagoland area when he filed the Kozak patent.

Mr. Zurn originally purchased flexible extension shafts from Japan in the early 1980s, but later switched to distributors in Taiwan and Korea when the Japanese prices became too high. A flyer called the "Taiwan Hardware '86-'87 Buyers' Guide" advertised a flexible extension shaft in its Catalog No. 2021 as published in 1986 by Trade Winds, Inc.

Mr. Kozak purchased a prototype for his flexible extension shaft from a Taiwan manufacturer. He does not remember the identity of this manufacturer, nor does he have any of his invention notes from the 1980s. Mr. Kozak denies that he saw the True Value/Shinki product. The Kozak patent application did not include a disclosure of flexible extension shafts that were permanently attached to screwdrivers.

## II. Discussion

A motion for summary judgment "is as appropriate in a patent case as it is in any other case." *Avia Group Int'l Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1561 (Fed. Cir. 1988)

(collecting cases). A motion for summary judgment must be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether there is a genuine issue of fact, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *Butera v. Cottey*, 285 F.3d 601, 605 (7th Cir. 2002).

### A. Patent Invalidity

ICC seeks summary judgment on the patent infringement claim, arguing that the Kozak patent is invalid under either 35 U.S.C. § 102(b) or under 35 U.S.C. § 103. The burden is on ICC to prove by clear and convincing evidence that the Kozak patent is invalid. *See Innovative SCUBA Concepts, Inc. v. Feder Indus. Inc.*, 26 F.3d 1112, 1115 (Fed. Cir. 1999) (noting that a patent is presumed valid under 35 U.S.C. § 282).

#### 1. 35 U.S.C. § 102

Under 35 U.S.C. § 102, a person is entitled to a patent unless "the invention was . . . on sale in this country, more than one year prior to the date of the application for patent in the United States. . . ." The party challenging the patent must show "by clear and convincing evidence that there was a definite sale or offer to sell more than one year before the application for the patent and that the product sold or offered for sale anticipated the claimed invention or rendered it obvious." *Minnesota Mining and Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir. 2002). The alleged infringer must demonstrate that the single prior art discloses each

and every element of a claimed invention. *Electro Med. Sys., S.A. v. Cooper Life Sci., Inc.*, 34 F.3d 1048, 1052 (Fed. Cir. 1994).

ICC states that it is "incontestable" that the Shinki tool sold by True Value meets the above standard to invalidate the Kozak patent. Not surprisingly, Eazypower contests this conclusion. First, ICC relies heavily on the flexible extension tool in True Value packaging found in Mr. Fuller's basement as proof that the tool was "on sale" more than one year prior to September 15, 1988, the date of Mr. Kozak's patent application. Eazypower's expert determined that the packing surrounding the flexible extension tool found in Mr. Fuller's basement is more than twenty years old. ICC also relies on other evidence. Mr. Fuller testified that his company, Omega, sold flexible screwdriver shafts to True Value in the early 1980s. Mr. Zurn testified that in his capacity as a buyer for True Value he purchased flexible screwdriver shafts from Omega. There is also a 1984 Shinki patent publication. Furthermore, Mr. Wu testified that he is familiar with an identical product sold under Shinki's Sun Flag trademark in 1984-85 and that Mr. Wu himself sold "identical" flexible shafts in the 1984-85 time period. ICC also argues that certain arbitrary features were copied from the True Value product.

Eazypower raises factual issues with respect to these assertions. While Mr. Fuller testified that the flexible extension tool found in his basement were sold by True Value under the Omega name from 1981 to 1984, the Omega flexible extenders featured in the Omega catalogs at the same time frame were claimed to be six inches long. The flexible extender found in Mr. Fuller's basement is 7½" long. While ICC counters that the two shafts are the same size because it was the industry standard at the time to exclude the male end portion of the shaft from the measurement and to round down to avoid disappointing customers, Eazypower disputes that

this was the industry standard. The expert dating analysis of the packaging surrounding the flexible extension tool found in Mr. Fuller's basement does not clear up the issue. Although the packaging was dated to be around the time frame claimed by ICC, the tests also revealed an adhesive on the package. Mr. Fuller testified that adhesive was never used on this type of package. Eazypower also raises an issue as to the country of origin of the flexible extension tool found in Mr. Fuller's basement. Although the tool was purportedly manufactured in Japan, it does not contain any "made in Japan markings." ICC responds that this is a "red herring," but proffers no other explanation.

Thus, issues of material fact preclude a finding that an invention was on-sale one year prior to the application for the Kozak patent.

Furthermore, it should be noted that although we are required to construe the claims, then determine if every element of the Kozak patent is disclosed by the prior item, ICC seems to gloss over this analysis and relies on various assertions that the earlier tools are "identical" to the Kozak patent. *See Dana Corp. v. American Axle & Mfg., Inc.*, 279 F.3d 1372, 1376 (Fed. Cir. 2002) (emphasizing that "a court may not invalidate the claims of a patent without construing the disputed limitations of the claims and applying them to the allegedly invalidating acts"). Eazypower argues that ICC has failed to demonstrate that the flexible extension tool found in Mr. Fuller's basement, the Japanese patent, and the Shinki product contain at least the following elements of the Kozak patent: a plurality of concentric coil springs in a tightly wound adjacent relation; a shoulder inside the cylindrical fittings; cylindrical body portions being spaced by a greater distance than the distance between said shoulders in said cylindrical fittings; and limited axial movement of said cylindrical body portions. Kozak patent, col. 5, ln. 3-19. Any analysis of

these claims can be left for a future date, considering the material factual issues surrounding the prior products.[4] *See e.g. Sofamor Danek Group, Inc. v. DePuy-Motech, Inc.*, 74 F.3d 1216, 1221 (Fed. Cir. 1996) ("Markman does not obligate the trial judge to conclusively interpret claims at an early stage in a case. A trial court may exercise its discretion to interpret the claims at a time when the parties have presented a full picture of the claimed invention and prior art.") (citations omitted); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1580 (Fed. Cir. 1996) ("The district court delayed construing the disputed language until the close of [trial] testimony. . . .").

2. <u>35 U.S.C. § 103(a)</u>

Even if the prior art does not identically disclose or describe the elements of the patent sought to be invalidated pursuant to 35 U.S.C. § 102, the patent is invalid for obviousness if the differences between the patent and the "prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a). "Throughout the obviousness determination, a patent retains its statutory presumption of validity . . . and the movant retains the burden to show the invalidity of the claims by clear and convincing evidence as to underlying facts." *Rockwell Int'l Corp. v. United States*, 147 F.3d 1358, 1364 (Fed. Cir. 1998) (citations omitted).

While the ultimate determination of obviousness is a question of law, several factual inquiries underlie this determination. *Richardson-Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1479

---

[4] Claim 1 of the Kozak patent has already been construed in the case of *Eazypower Corp. v. Performance Tool*, No. 98 C 6583, Order dated January 23, 2002, entered by Judge Norgle, Docket No. 25.

(Fed. Cir. 1997). These so-called *Graham* factors are: the scope and content of the prior art; the differences between the claims and the prior art; the level of ordinary skill in the pertinent art; and secondary consideration, if any, of nonobviousness. *Rockwell*, 147 F.3d at 1362 (citing *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)). We find that material factual issues preclude a grant of summary judgment in favor of ICC.

For the first factor, the scope and content of the pertinent prior art, the prior "relevant art 'is defined by the nature of the problem confronting the would-be inventor.'" *Ryko Mfg. Co. v. Nu-Star, Inc.*, 950 F.2d 714, 716 (Fed. Cir. 1991) (*quoting Orthopedic Equip. Co. v. United States*, 702 F.2d 1005, 1008 (Fed. Cir. 1983). In this case, the prior art would include flexible extension shafts for power tools as shown by the '185 patent. Yet the parties eschew a discussion of the scope and content of the prior art and instead skip right to the next factor - the differences between the prior art and the claims.

In their revised briefs,[5] the parties focus their energies on discussing lines 15-19, column 5, of claim 1 of the Kozak patent: "cylindrical body portions being spaced apart by a distance greater than the distance between said shoulders in said cylindrical fittings to permit limited axial movement of said cylindrical body portions and said concentric coil springs relative to said cylindrical fittings and said flexible sleeve." This distance or gap is what permits the internal concentric coil springs to move independently of the surrounding flexible sleeve.[6] Because this

---

[5] ICC incorporates by reference pages 8-18 of its original memorandum in support of its motion for summary judgment and Eazypower incorporates by reference its response to the original memorandum. In their revised briefs, the parties focus on one specific aspect of Claim 1 of the Kozak patent to compare to the prior art.

[6] See Plaintiff's Proposed Order of Claim Construction, *Eazypower Corp. v. Performance*
(continued...)

does not appear to be disclosed in the '185 patent, ICC offers two explanations as to how the prior art can still invalidate the Kozak patent. First it contends that the gap has to be present or the cylindrical bodies would be in contact with the shoulders of the cylindrical fittings which would prevent free movement. It also argues that it would have been obvious to one skilled in the art to include the gap to allow for limited axial movement. To the extent that it is not obvious, ICC argues that Japanese Patent No. 56-14053 (the '053 patent) teaches the gap and limited axial movement.

ICC, however, does not present any evidence what these patents would teach one skilled in the art.[7] It relies instead on Mr. Kozak's testimony that it is "simple physics" that for a protective sheet to slide back and forth on a flexible connecting cable, the cable has to be longer. However, the fact that an invention uses a known scientific principle does not make that invention obvious. *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 837 F.2d 1044, 1053 (Fed. Cir. 1988). It is improper, on a motion for summary judgment for invalidness, to draw inferences against a patentee on questions of the knowledge of one of ordinary skill in the art. *Rockwell Int'l*, 147 F.3d at 1366. Furthermore, with respect to the '185 patent, Eazypower suggests that the cylindrical bodies could turn by sliding on the shoulders of the cylindrical fittings. ICC also does

---

[6](...continued)
*Tool*, No. 98 C 6583, Docket No. 24: The cylindrical body portions are spaced apart a distance greater than the distance separating the internal shoulders defined by the fittings. These respective distances allow the cylindrical bodies attached to the spring coils to move axially relative to the flexible sleeve and the fittings secured thereto.

[7] The '053 patent differs from the Kozak patent in that the inner shaft of the flexible screw driver shown in the '053 patent does not move independently of the surrounding flexible sleeve.

not make a showing that the prior art suggests combining the references to make a new invention. *See Gambro Lundia, AB v. Baxter Healthcare Corp.*, 110 F.3d 1573, 1578-79 (Fed. Cir. 1997).

ICC has not demonstrated by clear and convincing evidence that all aspects of the Kozak patent were obvious to one of ordinary skill in the art at the time the invention was made.

A final note: ICC spent a fair amount of time discussing Mr. Kozak's alleged fraud and other misdeeds before the Patent Office -- that he withheld information from the Patent Office, that he copied the True Value product and presented it as his own to the Patent Office, and that he violated the "best mode" provision of 35 U.S.C. § 122, each of which would render the patent invalid. Eazypower responds that ICC has failed to demonstrate by clear and convincing evidence that Mr. Kozak knew of and concealed a better mode of carrying out his invention. It argues that it was really Omega that stole the design and sold it to True Value. The Court declines to accept ICC's contentions of fraud because we will not make credibility determinations on a motion for summary judgment. *See Rockwell*, 147 F.3d at 1361. Furthermore, ICC represented at oral argument that it is not dealing with fraud before the patent office, it is merely trying to show that prior art existed before the Kozak patent. The Court takes that into consideration, but declines to reach a judgment against Eazypower for patent invalidity based on any of the asserted grounds.

### B.  Trade Dress Infringement Claim

Eazypower also has brought a claim against ICC for trade dress infringement (Count II). It claims that the following elements define its trade dress on the flexible screwdriver extension: two narrow knurled bands on the male end cylindrical fitting and one wide knurled band on the

female end cylindrical fitting where the knurled bands have grooved lines running in the axial direction. ICC argues that the alleged trade dress is not protected because it does not have secondary meaning and, alternatively, that the trade dress is functional.

Trade dress is "the total image of a product" and includes size, shape, color(s), textures, graphics, and particular sales techniques. *Syndicate Sales, Inc. v. Hampshire Paper Corp.*, 192 F.3d 633, 636 (7th Cir. 1999) (quotations omitted). Trade dress includes product design. *Wal-Mart Stores, Inc. v. Samara Bros. Inc.*, 529 U.S. 205, 209-10 (2000). However, the appearance of a product will be protected "only if that appearance serves as a signifier of the product's source. . . . Otherwise competitors are free to copy the product's configuration down to the minutest detail, no matter how unique or original that product may be." *Sassafrass Enters., Inc. v. Roshco, Inc.*, 915 F. Supp. 1, 4 (N.D. Ill. 1996) (internal citation omitted). Product design "almost invariably serves purposes other than source identification. . . ." *Wal-Mart*, 529 U.S. at 213.

"An infringement of the trade dress is proven if: (1) the plaintiff's trade dress . . . has acquired secondary meaning, (2) the plaintiff's trade dress is primarily non-functional, and (3) the defendant's trade dress is confusingly similar, engendering a likelihood of confusion in the marketplace." *Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 935 (7th Cir. 1989). The burden of proof is on the plaintiff to show that prongs one and three have been met, while the defendant has the burden of proof to demonstrate that the trade dress is primarily functional. *Publications Int'l Ltd. v. Landoll Inc.*, 1997 WL 769349, at *3 (N.D. Ill. Dec. 5, 1997). In this context of this motion for summary judgment, Eazypower does not have to "show" or "prove" anything, rather, its burden is to create a genuine issue of material fact.

1.  Secondary Meaning

Secondary meaning occurs when, "in the minds of the public, the primary significance of [the trade dress] is to identify the source of the product rather than the product itself." *Wal-Mart*, 529 U.S. at 211 (*quoting Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 851, n.11 (1982)). This is difficult to prove in product design cases because "even the most unusual of product designs . . . is intended not to identify the source, but to render the product itself more useful or more appealing." *Id.* at 213. Secondary meaning can be shown through the following factors: length and manner of use, amount and manner of advertising, volume of sales, proof of intentional copying, consumer testimony and consumer surveys. *Thomas & Betts v. Panduit Corp.*, 138 F.3d 277, 291 (7th Cir. 1998) (citations omitted).

Eazypower claims that its flexible extenders have had the above-described trade dress since 1988. It claims it was the exclusive seller of flexible extenders utilizing this trade dress until the mid-1990's when the allegedly infringing products started to appear. Eazypower also claims that it has advertised and promoted the flexible extenders with this trade dress in print ads, at tradeshows, on the radio, and on television all to the tune of approximately $1,000,000. A third-party periodical, the Home Mechanix, has provided unsolicited coverage of the Eazypower flexible extenders. Eazypower further claims that the volume of sales for its flexible extenders supports a finding of secondary meaning. Since 1988 its revenues for the flexible extenders have totaled at least $3.9 million dollars. Additionally, Eazypower claims that because ICC's flexible extension shafts are nearly identical to Eazypower's flexible extension shafts it can be inferred that ICC intentionally copied the Eazypower trade dress. Eazypower has not proffered any evidence of consumer testimony or consumer surveys, but has merely noted that "evidence of

confusion is notoriously difficult to obtain." *See Playboy Enter., Inc. v. Universal Tel-A-Talk*, 1998 WL 767440, at *6 (E.D. Pa. Nov. 3, 1998). Eazypower is not required to submit direct evidence of secondary meaning in order to prevail on its claim. *See Platinum Home Mortgage*, 149 F.3d at 728 ("While not fatal to its request, the absence of that evidence weighs against Platinum Mortgage").

In its initial revised memorandum in support of its motion for summary judgment, ICC notes that Eazypower does not have consumer surveys or direct testimony. It further argues that Eazypower cannot establish secondary meaning because the advertising done by Eazypower does not point out the "distinctive" product design of the flexible extension shaft. It also contends that any evidence of advertising or profits set forth by Eazypower do not establish the link in the minds of consumers between the product design and Eazypower as the source of the product design. ICC also disputes that Eazypower has produced evidence of intentional copying, because it contends that third parties originated the trade dress prior to 1988. In its reply brief, ICC does not address any of Eazypower's proffered evidence as set forth in Eazypower's response brief. While the Court doubts that evidence produced by Eazypower is anywhere near conclusive, at this juncture in time, we find that Eazypower has raised genuine issue of material fact as to whether several of these factors favor a finding that its product design is protectable trade dress.

2. <u>Functional</u>

A design feature is functional if it is "one which competitors would have to spend money not to copy but to design around . . . . It is something costly to do without . . . rather than costly to have. . . ." *W.T. Rogers Co., Inc. v. Keene*, 778 F.2d 334, 339 (7th Cir. 1985). It is ICC's

burden to show that the alleged trade dress is primarily functional. It has offered no evidence and really has not even made any arguments in this regard. Perfunctory arguments that are unsupported by pertinent authority are waived. *United States v. Berkowitz*, 927 F.2d 1376, 1391 (7th Cir. 1991).

Because we find that Eazypower has demonstrated material issues of fact with respect to secondary meaning, ICC's motion for summary judgment on the trade dress infringement claim is denied.

### C. Preemption of State Law Claims – Unfair Competition and Violation of the Illinois Uniform Trade Practices Act

ICC argues that Eazypower's claims for unfair competition and violation of the Illinois Uniform Trade Practices Act are preempted because protection under state law is limited to products "which have acquired secondary meaning such that they operate as a designation of source." *Quoting Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 158 (1989). However, as discussed above, a dispute over genuine material issues of fact precludes a determination of secondary meaning at this stage. Thus, ICC's motion for summary judgment on Counts III and IV is denied.

### III. Conclusion

For the foregoing reasons, Defendant ICC's motion for summary judgment is denied.

**ENTER ORDER:**

_(signature)_

**MARTIN C. ASHMAN**
United States Magistrate Judge

**Dated:** October 17, 2002.

Copies have been mailed to:

| | |
|---|---|
| ROBERT BREISBLATT, Esq.<br>KARA E. F. CENAR, Esq.<br>JOSEPH E. CWIK, Esq.<br>Welsh & Katz, Ltd.<br>120 South Riverside Plaza<br>22nd Floor<br>Chicago, IL 60606<br><br>MICHAEL J. CHERSKOV, Esq.<br>DONALD G. FLAYNIK, JR., Esq.<br>Cherskov & Flaynik<br>The Civic Opera Building<br>20 North Wacker Drive<br>Chicago, IL 60606<br><br>Attorneys for Plaintiff | ANTHONY H. HANDAL, Esq.<br>Handal & Morofsky<br>80 Washington Street<br>Norwalk, CT 06854<br><br>ELLEN L. FLANNIGAN, Esq.<br>Mora, Baugh, Waitzman & Unger<br>55 West Monroe Street<br>Suite 600<br>Chicago, IL 60603<br><br><br><br><br>Attorneys for Defendant |